STATE *ex rel.* H. L. JARRELL

*v.*

CHARLES WALKER, PROSECUTING ATTORNEY
OF KANAWHA COUNTY, *Etc.,* COUNTY COURT
OF KANAWHA COUNTY, A. CARL CAREY, *et al.*

(No. 12031)

Submitted October 4, 1960. Decided December 20, 1960.

*Cleo S. Jones,* for relator.

*W. W. Barron,* Attorney General, *Henry C. Bias, Jr.,*
Assistant Attorney General, *Paul M. Friedberg,* for
respondents.

BROWNING, PRESIDENT:

H. L. Jarrell instituted this original proceeding in
this Court praying for a writ of mandamus directing
the respondent, Charles Walker, Prosecuting Attorney
of Kanawha County, to approve for payment certain
fee bills and directing the respondent, County Court of
Kanawha County, and A. Carl Carey, A. H. Glenn and

S. Grover Smith, the members thereof, to authorize the Sheriff of Kanawha County to pay to the petitioner the sums of money thus allegedly due him.

The petition alleges in substance that: He was duly elected and qualified as Justice of the Peace for Loudon District, Kanawha County, West Virginia, and served as such from January 1, 1953 until October 13, 1958; on December 1, 1958, he submitted to the office of the Prosecuting Attorney two statements of fees, one in the amount of $1,819.50 and one in the amount of $2,702.00, which he had earned while serving as a justice of the peace; the respondent, Walker, as Prosecuting Attorney must approve all proper fee bills submitted by justices of the peace; the respondent, County Court of Kanawha County, and the members thereof, must then authorize the Sheriff to make payment thereof; the respondents have refused to approve the fee bills or to authorize payment thereof; and concluded with the prayer above mentioned.

This Court issued a rule directed to the respondents requiring them to show cause why the writ as prayed for should not be awarded, in response to which the respondents appeared and answered denying petitioner's right to said fees or any part thereof.

The facts in regard to each claim have been stipulated. The items making up the claim for $1,819.50 were submitted to and approved by the Prosecuting Attorney's office, payment was authorized by the County Court, and payment was made by the Sheriff. Subsequently, the State Tax Commissioner, in accordance with the applicable statutes, caused an audit to be made of petitioner's books and records, as a result of which the Tax Commissioner concluded that the items in this claim were not proper charges and that they should be repaid to the Treasury of Kanawha County. Petitioner immediately repaid these fees to the Sheriff and has not since presented these items for approval and payment. However, respondents have stipulated that if such items were presented again they would refuse to approve or authorize payment of any

part of them. Of the 509 individual items making up this claim, in only 43 cases was there a trial or a hearing on the merits held by the petitioner, and in at least 41 of these cases no costs were imposed on or collected from the defendants. Of the remainder some other disposition was made subsequent to the issuance of a warrant by the petitioner, and the defendant's arrest thereunder, although in 51 of the cases the defendant was never apprehended.

In regard to the claim for $2,702.00, petitioner assessed and received a prepayment of the costs, either from the complaining witness or the defendants themselves, at the time of issuing the warrant or when the proceedings were dismissed or otherwise disposed of. The receipts given by the petitioner for such prepayments were not entered or taken from the Official Receipt Book issued by the Tax Commissioner for that purpose, but were taken from other receipt books kept by the petitioner. In none of the 772 cases making up this claim was any trial or formal hearing held by the petitioner. It is further stipulated that: On October 2, 1958, the petitioner was advised of the Tax Commissioner's conclusions, pursuant to an audit of the petitioner's records for the period beginning January 1, 1956, and ending June 30, 1958, that these payments had been improperly collected, and petitioner immediately paid the $2,702.00 representing these prepayments into the Kanawha County Treasury; the petitioner resigned his office of Justice of the Peace on October 13, 1958; the Tax Commissioner immediately thereafter began a final audit of the records of the petitioner which was completed about October 30, 1958; at the time the audit was completed, criminal docket book No. 15 was the last such record in which petitioner had made entries of criminal cases instituted in his court; the fee bills constituting the claim, amounting to $2,702.00, were submitted to the Prosecuting Attorney of Kanawha County for approval on December 15, 1958, and referred to Docket Books Nos. 16 and 17, which were not in existence on October 30,

1958, the date of the completion of the Tax Commissioner's audit; the Prosecuting Attorney of Kanawha County refused to approve the petitioner's claim on February 5, 1959; and the petitioner filed his petition for this writ in this Court on March 4, 1960·.

Mandamus will lie to enforce the performance of duties imposed upon a public official and this extraordinary remedy is the proper means of securing the relief which the petitioner seeks if the pleadings and the stipulation of facts warrant.

It will be noted that the Tax Commissioner "concluded" that petitioner was not entitled, under the provisions of Articles 17 and 18, Chapter 50, of the Code, as amended, to the fees which he now seeks to recover in this proceeding. If such "conclusion" was correct then, of course, petitioner is not entitled to the relief prayed for. However, we do not reach that question in this extraordinary proceeding in mandamus. It is clear from the record before us that the petitioner, with full knowledge of all of the pertinent facts, voluntarily paid to the Sheriff of Kanawha County the sum of $1,819.50, and on a subsequent occasion the sum of $2,702.00.

The principle of law seems well settled that if a private individual makes a voluntary payment of money to another person by mistake or ignorance of the law, but with full knowledge of all of the pertinent facts, he cannot recover such payment in the absence of fraud or improper conduct on the part of the payee. 70 C. J. S., Payment, 362 to 366; *County Court v. Long,* 72 W. Va. 8, 77 S. E. 328. However, there is a generally recognized exception to this rule where payment is made by a public officer. 70 C.J.S., Payment, pp. 364, 365. In the *Long* case the County Court sought to recover from Long, the Sheriff, moneys alleged to have been illegally paid under a mistake of law. The 3rd Syllabus Point of that case correctly states the rule where public money is paid by a fiscal body even under a mistake of law. It reads: "Payments so unlawfully made in ignorance or mistake of law may be re-

covered back by a county court by suit against such officer to whom such payments were so made." Authority is cited in the opinion in support of that principle.

In the instant case, petitioner was an elected public official at the time when he made these voluntary payments, and it is against the Prosecuting Attorney and the three members of the County Court in their official capacities that he seeks relief. Thus, the parties to this proceeding are reversed from the situation in the *Long* case. Also, the monies illegally paid to the Sheriff in the *Long* case were public monies. In this proceeding, in regard to the claim of $1,819.50, payment was made to petitioner, whether properly or improperly we do not decide, and became his private funds, which he then voluntarily paid into the Treasury of Kanawha County, and we are cited to no authority either in this jurisdiction or elsewhere in support of petitioner's contention that he falls within the exception rather than the general rule, nor are we cited to any statute, nor do we find any, by which the Legislature of this State has authorized the recovery of money from a County Court by a Justice of the Peace who had, under a mistake of law, paid voluntarily such money into the county treasury when he was aware of all of the facts at the time he made the payment. There are statutes permitting the recovery of taxes and other sums of money paid by private citizens to the State, or other governmental agencies, under a mistake of law. See Code, 11-1-2a, as amended. Such a statute, applicable to this petitioner, or a "clear legal right" of similar import, is a prerequisite to relief in the extraordinary proceeding of mandamus. Similarly, in regard to the claim for $2,702.00, we need not decide whether such monies were properly or improperly collected by the petitioner, in view of petitioner's failure to show a clear legal right to the relief sought. Whether petitioner may establish such right in another proceeding we need not decide. Suffice to say that the right to a writ of mandamus cannot be established in the proceeding itself; it must exist when the proceeding

is instituted. *State ex rel. Graney v. Sims,* 144 W. Va. 72, 105 S. E. 2d. 886.

The writ will be denied and the rule heretofore issued will be discharged.

*Writi denied.*